An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-323

Filed 1 July 2026

Cleveland County, Nos. 22CR000784-220, 22CR000792-220, 22CR000793-220, 22CR000794-220

STATE OF NORTH CAROLINA

v.

JEFFERY SCOTT MARTIN, Defendant.

Appeal by Defendant from judgments entered 18 January 2024 by Judge Jacqueline D. Grant in Cleveland County Superior Court. Heard in the Court of Appeals 15 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Sara H. Player, for the State.*

> *Patterson Harkavy, LLP, by Narendra K. Ghosh, for Defendant–Appellant.*

PER CURIAM.

Jeffery S. Martin (Defendant) appeals from judgments entered following jury verdicts finding him guilty of felonious possession of a weapon of mass destruction. On appeal, Defendant contends that the trial court erred by denying his motion to dismiss this charge because the State offered insufficient evidence that he possessed the weapon, which officers found in a shed of the home where Defendant resided with

others. For the following reasons, this Court holds there was sufficient evidence from which the jury could infer Defendant was in possession of the weapon and, therefore, the trial court did not err by denying Defendant's motion to dismiss the charge.

## I. Background

After receiving a complaint of potential drug activity on 18 July 2022, two officers with the Cleveland County Sheriff's Office conducted surveillance at 1142 Rollingbrook Court in Kings Mountain, N.C. The property contained a mobile home and a separate, metal storage shed about thirty feet from it. The officers observed Defendant sitting on a motorcycle outside the shed near other individuals. After engaging with those individuals and when the officers were in view of Defendant, he drove away on the motorcycle. Officer Bradley Ledford followed Defendant and pulled him over for operating the motorcycle without a helmet. During the stop, Defendant identified himself as Jeffery Martin and stated that he lived at the address. After radioing in and finding out that the motorcycle had been reported stolen, Officer Ledford arrested Defendant and placed him in the police vehicle. He observed Defendant sweating so profusely and breathing so heavily that he allowed him to sit in front of the air vents in the passenger seat of the patrol car. Defendant stated that he was "about to get sick" but declined Officer Ledford's offer of medical assistance more than once.

Officers transported Defendant to the sheriff's office, where Officer Derek Schaefer interviewed him about the stolen motorcycle. Defendant again confirmed

his address—the home the officers had been surveilling earlier that day. Officer Schaefer observed Defendant visibly shaking and encouraged him to not get "worked up too much." He indicated that his fiancée, mother, and cousin lived there with him. After the interview, officers charged Defendant with possession of a stolen vehicle. While Defendant was in custody that same day, Detective Matthew Clayton obtained a warrant to search the property based on probable cause for possession of stolen property, illegal narcotics, and drug paraphernalia. Officers executed the warrant later that day, searching both the mobile home and storage shed. Defendant was absent for the entire search, as he was already in police custody. At least three individuals and several "small kids" were on the property at the time the officers executed the search warrant.

Upon searching the shed, Sergeant Michael Lovelace found and seized, among other things, drug paraphernalia, several firearms, assorted ammunition, and "five or six" cell phones. One of the firearms was a sawed-off shotgun visibly modified to be three inches shorter than the legal requirement. One of the cell phones had been last used on the morning of the search and contained multiple email and social media accounts with usernames including "Jeffrey Martin," "martinjeffrey810," "jeffreymartin1948," "jeffmartin1948," and "Jeffrey.1310." That cell phone also contained photographs of Defendant holding one of the firearms seized during the search and of the stolen motorcycle, as well as text messages from the prior day stating that the user's address was 1142 Rollingbrook Court.

On 15 August 2022, a grand jury indicted Defendant for possession of a weapon of mass destruction. The case came on for trial on 16 January 2024. At the close of the State's evidence, defense counsel moved to dismiss the charge, which the trial court denied. Defendant declined to present evidence and renewed his motion, which the trial court again denied. The jury returned a verdict finding Defendant guilty of possession of a weapon of mass destruction. The trial court sentenced Defendant to 15–27 months of active imprisonment, which it suspended for 24 months of supervised probation to begin upon completion of Defendant's active sentences.[1] Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty).

## III. Analysis

On appeal, Defendant argues that the trial court erred by denying his motion to dismiss the charge of possession of a weapon of mass destruction because the State offered insufficient evidence that he possessed the weapon. We disagree.

---

[1] Defendant's other active sentences for convictions outside the scope of this appeal amount to 94–140 months' active imprisonment.

We review *de novo* the trial court's denial of a motion to dismiss for insufficient evidence. *See State v. Smith*, 186 N.C. App. 57, 62 (2007). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 379 (2000). "[S]ubstantial evidence" is any "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *State v. Franklin*, 327 N.C. 162, 171 (1990), and "requires only that there be more than a scintilla of evidence," *State v. Bracey*, 388 N.C. 689, 692 (2025) (quotation omitted). But dismissal is proper where the evidence only "raise[s] a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it." *Fritsch*, 351 N.C. at 378.

When determining the substantiality of the evidence, we focus on whether "more than a scintilla of evidence support[s] the disputed element," not on the weight or credibility of the evidence. *State v. Bradsher*, 382 N.C. 656, 670 (2022). We cannot reweigh the evidence, *State v. Chekanow*, 370 N.C. 488, 499 (2018), and instead must view the evidence "in the light most favorable to the State" by giving it "the benefit of every reasonable inference[,] and resolv[ing] any contradictions in its favor," *State v. Dover*, 381 N.C. 535, 547 (2022); *State v. Miller*, 363 N.C. 96, 98 (2009) ("[E]vidence unfavorable to the State is not considered."). And because evidence "supporting a contrary inference [doe]s not determin[e] . . . a motion to dismiss," *State v. Scott*, 356

- 5 -

N.C. 591, 598 (2002), "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence," *State v. Stone*, 323 N.C. 447, 452 (1988); *see State v. Ambriz*, 286 N.C. App. 273, 280 (2022) (recognizing that when "same substantial evidence" supports convictions for two different offenses, it is improper to dismiss either offense). The State may offer evidence by way of "proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant," *State v. Adcock*, 310 N.C. 1, 36 (1984), upon which the reviewing court may draw "inferences on inferences" to evaluate its substantiality, *State v. Childress*, 321 N.C. 226, 232 (1987).

If the evidence permits a reasonable inference of the defendant's guilt, "then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty," *State v. Blagg*, 377 N.C. 482, 489 (2021) (quotation omitted), "even [if] the evidence also permits a reasonable inference of the defendant's innocence," *Miller*, 363 N.C. at 99. "The province of the jury should not be invaded in any case, and when reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury." *State v. Clark*, 183 N.C. 733, 734–35 (1922). For this reason, in "borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *Blagg*, 377 N.C. at 489.

Under N.C.G.S. § 14-288.8, it is "unlawful for any person to . . . possess . . . or acquire any weapon of mass death and destruction," which includes "any shotgun with a barrel or barrels of less than 18 inches in length or an overall length of less than 26 inches." N.C.G.S. § 14-288.8(a), (c)(3) (2025). To convict a defendant under this statute, "the State must prove two elements beyond a reasonable doubt: (1) that the weapon is a weapon of mass death and destruction and (2) that defendant knowingly possessed the weapon."[2] *State v. Billinger*, 213 N.C. App. 249, 253 (2011).

Possession of a firearm can be actual or constructive. *See State v. Alston*, 131 N.C. App. 514, 519 (1998). A defendant "has actual possession of a firearm if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use." *Billinger*, 213 N.C. App. at 253. By contrast, he has constructive possession of a firearm when it is not in his physical possession but he knows of "its presence and has both the power and intent to control its disposition or use." *State v. Taylor*, 203 N.C. App. 448, 459 (2010). Constructive possession "requires a totality of the circumstances analysis." *Chekanow*, 370 N.C. at 493. But if the evidence reveals that the defendant was not in exclusive possession of the location where the firearm was found, the State must show "other incriminating circumstances . . . to establish constructive possession." *Taylor*,

---

[2] Defendant does not contest that this sawed-off shotgun is a weapon of mass destruction within the meaning of N.C.G.S. § 14-288.8.

203 N.C. App. at 459. In other words, although evidence showing the defendant's proximity to the firearm is insufficient on its own to establish constructive possession, such evidence may be sufficient when considered together with other factors that indicate incriminating circumstances. *See State v. Livingston*, 290 N.C. App. 526, 529 (2023). The court considers the following factors:

> (1) The defendant's ownership and occupation of the property; (2) the defendant's proximity to the firearm; (3) indicia of the defendant's control over the place where the firearm is found; (4) the defendant's suspicious behavior at or near the time of the firearm's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the firearm.

*Chekanow*, 370 N.C. at 496 (citation modified).

Because this list is non-exhaustive, "the absence of any of those circumstances is not dispositive." *Blagg*, 377 N.C. at 493–94. "Rather, the appropriate inquiry is a case-by-case, fact-specific consideration in which the totality of the circumstances is evaluated in the light most favorable to the State and which gives the State the benefit of every reasonable inference which can be drawn from the evidence . . . produced at trial." *Id.* at 494. Thus, this Court must focus its analysis on "the presence of evidence which *could* reasonably support an inference" of Defendant's possession of a weapon of mass destruction and "not upon the absence of any hypothetical evidence which could have strengthened or added support to the State's case." *Id.* And because "[t]his inquiry is necessarily fact specific; each case will 'turn on the specific

facts presented' and no two cases will be exactly alike." *State v. Bradshaw*, 366 N.C. 90, 94 (2012) (quotation omitted).

Here, Defendant argues that the State's evidence fails to demonstrate constructive possession by showing his intent and power to maintain control over the firearm because he "did not have exclusive control of the shed where the shotgun was found, and . . . no other evidence link[s] him to the shotgun." As Defendant correctly notes, we may "look to circumstances beyond a defendant's ownership and occupation of the premises" "when there is evidence that others have had access to the premises where the contraband is discovered." *Chekanow,* 370 N.C. at 495. "[W]hen there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession." *Id.* Thus, because Defendant lacked exclusive control of the premises, the State had the burden of demonstrating Defendant's intent and power to maintain control over the firearm by showing other incriminating circumstances.

While "[n]o one factor controls" the totality-of-the-circumstances analysis, we consider evidence of a defendant's ownership or occupation "of the premises on which the [firearm] is found [to be] strong evidence of control" and deem it a "weighty factor in the analysis." *Id.* at 497 (quotation omitted); *see State v. Tate*, 105 N.C. App. 175, 179 (1992) (But "the State is not required to establish that a defendant owned or leased the premises on which the contraband is found in order to prove" his control of such premises.). While the evidence does not show Defendant's *exclusive* control of

the property, it does show his occupation of it. Furthermore, Defendant himself admitted to law enforcement that he lived there. From this evidence, a reasonable juror could conclude that Defendant occupied the premises. Thus, drawing all reasonable inferences in favor of the State, this evidences an incriminating circumstance supporting a finding of constructive possession. *See Chekanow*, 370 N.C. at 496.

We also consider a defendant's proximity to the firearm "in terms of space and time." *Id.* Here, the shed was within thirty feet of the mobile home Defendant claimed to be his residence. Law enforcement had arrested and detained Defendant by the time they executed the search warrant of the shed, thus rendering Defendant absent from the shed at the time they found the weapon. Nonetheless, the evidence shows that officers observed Defendant standing in front of the shed just hours before they found the firearm within. From this evidence, a reasonable juror could conclude that Defendant was in close proximity to the firearm. *See id.* at 497 (sufficient evidence of constructive possession where the defendant's residence was nearly two hundred feet from contraband's location); *State v. Spencer*, 281 N.C. 121, 129 (1972) (evidence showing that shed containing contraband was about twenty yards from the defendant's residence and that defendant was seen around that area "raised a reasonable inference that defendant exercised custody, control, and dominion" over the shed "and its contents"); *Bradshaw*, 366 N.C. at 96 (sufficient evidence of proximity where defendant had occupied location where contraband was found two

days earlier); *State v. Baxter*, 285 N.C. 735, 738 (1974) (defendant's "temporar[y] absence" from the location is non-determinative where totality of circumstances supports a finding of constructive possession). Thus, drawing all reasonable inferences in favor of the State, this evidences an incriminating circumstance supporting a finding of constructive possession. *See Chekanow*, 370 N.C. at 496.

In addition to a defendant's occupation of the premises and proximity to the firearm, we also consider his "indicia of . . . control over the place where the contraband is found." *Id.* In so doing, we deem "whether a defendant's personal items were found in the same location as the contraband" and whether he had the "opportunity to place contraband in the place where it was found" to be indicia of control supporting a finding of constructive possession. *Id.* at 497. Here, the State introduced evidence of a cell phone that officers recovered from the shed, containing social-media accounts linked to Defendant, photographs of Defendant holding one of the firearms from the property, and the stolen motorcycle.[3] The cell phone's data indicated that it had last been used earlier that morning to send a message identifying Defendant's address as the user's address. Furthermore, the evidence

---

[3] Defendant contends the cell phone at issue was taken off his person, as opposed to having been found in the shed. The record shows six cell phones were seized in total. At trial, Sergeant Lovelace testified one cell phone was collected "from [Defendant] on the motorcycle," but the other five were collected from the shed. At trial, a forensic analyst testified about a phone which appeared to belong to Defendant because much of the data on the cell phone was under Defendant's name. But it is not clear from the record whether this phone was the cell phone collected from Defendant's person or one of the cell phones collected from the shed. Because we take the evidence in the light most favorable to the State, we consider this cell phone to be one of the five cell phones seized from the shed for the limited purpose of our present analysis.

does not suggest that any other resident exercised control over the shed or the contraband within.

From this evidence, a reasonable juror could conclude that the cell phone either belonged to, or was used by, Defendant that morning and that, by either using the phone inside the shed or placing it there afterward, Defendant left a "personal item" inside the shed, thereby demonstrating his "opportunity to place the contraband" where it would be discovered later that day. A reasonable juror could conclude these facts demonstrate an indicium of control by Defendant over the shed. *Id.* at 496–97. Drawing all reasonable inferences in favor of the State, this evidences an incriminating circumstance that supports a finding of constructive possession. *Id.* at 496; *see State v. Alston*, 193 N.C. App. 712, 716 (2008) (evidence showing a defendant's personal items in the same room where officers found illegal drugs was sufficient for constructive possession, despite his nonexclusive control of the premises).

Finally, we consider "the defendant's suspicious behavior at or near the time of the contraband's discovery," *Chekanow*, 360 N.C. at 496, including "a defendant's nervousness or suspicious activity in the presence of law enforcement," *State v. Hudson*, 206 N.C. App. 482, 490 (2010). Here, the State's evidence showed that Defendant did not flee from the shed until after he and the officers were in view of each other. Further, during the traffic stop, Defendant was sweating so profusely and breathing so heavily that Officer Ledford allowed him to sit in front of the air vents

of the patrol car's passenger seat and offered him medical assistance more than once. The evidence also showed that, when interviewing Defendant at the station, police observed him visibly shaking and encouraged him to not get "worked up too much." From this evidence, a reasonable juror could conclude that Defendant was exhibiting suspicious behavior in the presence of law enforcement. *See State v. Tisdale*, 153 N.C. App. 294, 296 (2002) (finding that defendant exhibited suspicious behavior by sweating profusely). Thus, drawing all reasonable inferences in favor of the State, this evidences an incriminating circumstance that supports a finding of constructive possession. *See Chekanow*, 370 N.C. at 496.

Viewing the totality of the evidence here in the light most favorable to the State and in consideration of the *Chekanow* factors, we conclude that the State offered substantial evidence such that a reasonable mind might accept as adequate to support a conclusion that Defendant lived at the property with the shed in close proximity; possessed the sawed-off shotgun and other weapons inside the shed; used his cell phone containing photographs of the other seized weapons inside the shed earlier that morning; stood outside the shed; fled the scene on the stolen motorcycle without a helmet; and acted nervous when law enforcement pulled him over and interviewed him at the station. Thus, notwithstanding Defendant's nonexclusive possession of the shed, we conclude that the State provided sufficient incriminating circumstances linking Defendant to the sawed-off shotgun found inside the shed.

Accordingly, we hold that the trial court properly denied Defendant's motion to dismiss and correctly submitted the question of his guilt to the jury.

## IV.    Conclusion

For the reasons above, this Court holds that the trial court did not err in denying Defendant's motion to dismiss the charge of possession of a weapon of mass destruction.

NO ERROR.

Panel consisting of Chief Judge DILLON and Judges HAMPSON and MURRY.

Judge HAMPSON dissents by separate opinion.

Report per Rule 30(e).

No. COA25-323 – *State v. Martin*

HAMPSON, Judge, dissenting.

The issue in the present appeal is fairly straightforward: did the State produce "more than a scintilla of evidence" Defendant constructively possessed the sawed-off shotgun seized from the shed at 1142 Rollingbrook Court? Applying our existing precedent, I disagree with the Majority's conclusion and would hold it did not. As such, in my view, the trial court erred by denying Defendant's Motions to Dismiss and not dismissing the charge of Possession of a Weapon of Mass Destruction.

"In order to obtain a conviction for possession of a weapon of mass death and destruction, the State must prove two elements beyond a reasonable doubt: (1) that the weapon is a weapon of mass death and destruction and (2) that defendant knowingly possessed the weapon." *State v. Billinger*, 213 N.C. App. 249, 253, 714 S.E.2d 201, 205 (2011) (citing *State v. Watterson*, 198 N.C. App. 500, 504-05, 679 S.E.2d 897, 900 (2009)). Because Defendant was at no point observed in actual possession of the sawed-off shotgun, the State in this case proceeded on a theory of constructive possession.

"A finding of constructive possession requires a totality of the circumstances analysis." *State v. Chekanow*, 370 N.C. 488, 493, 809 S.E.2d 546, 550 (2018) (citations omitted). "When contraband is 'found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which *may* be sufficient to carry the case to the jury on a charge of

unlawful possession.' " *Id.* (emphasis in original) (quoting *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270-71 (2001)).  " 'However, unless the [defendant] has exclusive possession of the place where the [contraband is] found, the State *must* show other incriminating circumstances before constructive possession may be inferred.' " *Id.* (quoting *Matias*, 354 N.C. at 552, 556 S.E.2d at 271) (emphasis added).

> In determining whether sufficient incriminating circumstances exist to support a finding of constructive possession, a review of [the Supreme Court of North Carolina's] cases reveals that we have considered the following factors: (1) the defendant's ownership and occupation of the property (as previously discussed); (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband.

*Id.* at 496, 809 S.E.2d at 552 (citations omitted).  No one factor is controlling; rather, "[w]hether incriminating circumstances exist to support a finding of constructive possession is a fact-specific inquiry." *Id.* (citing *State v. Miller*, 363 N.C. 96, 99-100, 678 S.E.2d 592, 594-95 (2009)); *see also Miller*, 363 N.C. at 99, 678 S.E.2d at 594 ("Our cases addressing constructive possession have tended to turn on the specific facts presented." (citations omitted)).

The evidence itself "is for the jury to weigh, not the trial court, and it is certainly not for the appellate courts to reweigh[,]" *Chekanow*, 370 N.C. at 499, 809 S.E.2d at 554, but "[w]hether the State has offered such substantial evidence is a question of law for the trial court[,]" *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d

2

578, 583 (1975) (citations omitted), and a question which this Court reviews de novo, *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to . . . the commission of the offense . . . , the motion [to dismiss] should be allowed." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted).

Here, the State's evidence showed Defendant lived at 1142 Rollingbrook Court with at least three other individuals. Our Supreme Court has instructed that when possession over the premises where contraband is found is nonexclusive, there must be evidence of *additional* incriminating circumstances—circumstances other than the defendant's possession of the premises—linking the defendant to the contraband before the case may be submitted to the jury. *Chekanow*, 370 N.C. at 493, 809 S.E.2d at 550; *State v. McLaurin*, 320 N.C. 143, 147, 357 S.E.2d 636, 638-39 (1987) (concluding because the defendant's "control over the premises in which the paraphernalia were found was nonexclusive, and because there was *no evidence of other incriminating circumstances linking her to those items*, her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia." (emphasis added)).

The State's evidence of incriminating circumstances, taken in the light most favorable to the State and summarized in the Majority opinion above, tended to show: Defendant lived at 1142 Rollingbrook Court; there was a shed on the property in which the sawed-off shotgun was found; Defendant was seen standing outside of the

3

shed on the day the sawed-off shotgun was seized; and officers also recovered a cell phone from the shed containing, among other things, various social media accounts linked to Defendant. But to survive a motion to dismiss, the State's evidence in this case must do more than merely place Defendant in the shed, it must "allow the jury to reasonably infer *a link between defendant and the contraband*." *State v. Bradshaw*, 366 N.C. 90, 97, 728 S.E.2d 345, 350 (2012) (emphasis added). In the instant case, it did not.

To be sure, there appears to be no dispute as to whether Defendant had some level of control over the shed. Defendant readily informed law enforcement he resided at the property on which the shed is located, and a cell phone allegedly belonging to him was found in the shed. If that were the question in this case, then perhaps it could be easily open and shut. But that is not the question before us. The sole issue before this Court is whether the State produced substantial evidence from which a jury could find Defendant constructively possessed the sawed-off shotgun, and our caselaw is clear that when there is nonexclusive possession over premises where contraband is found and "no evidence link[ing] the defendant *to the contraband*, which any of the residence's occupants could have possessed separately and exclusively from" him, the evidence is insufficient to survive a motion to dismiss. *Id.* at 95, 728 S.E.2d at 349.

It is true, the cell phone evidence places Defendant inside the shed at some point, but it does not link Defendant to the sawed-off shotgun. Although there were

4

photographs found on the cell phone of Defendant holding one of the *other* firearms seized in this case, there was no evidence of photographs of the sawed-off shotgun—much less of Defendant with the sawed-off shotgun—on the cell phone.  Nor was there other evidence of any kind connecting Defendant to the sawed-off shotgun, such as, for example, evidence Defendant possessed ammunition of the kind needed for the shotgun.  Simply put, the cell phone evidence does not connect Defendant to the sawed-off shotgun any more than his admitted possession of the premises does.  *See id.*

Moreover, the cases cited by the Majority in support of its conclusion are readily distinguishable from the case at bar, as the State's evidence of additional incriminating circumstances in each of those cases showed distinct links to the contraband at issue.  In *Chekanow*, marijuana plants were found in "close proximity" to an area maintained by the defendants; one defendant had recently accessed the area where the plants were found growing; the plants were found in a fenced-in area, over which the defendants had the ability to control entry; and the defendants' chicken coop was in the same fenced-in location.  370 N.C. at 497-98, 809 S.E.2d at 553.  Notably absent in the instant case, there was also evidence of suspicious behavior exhibited by one of the defendants who made an obscene gesture toward the "clearly marked State Highway Patrol helicopter as it flew over her property[ ]" and who "appeared to flee the premises in a vehicle as the helicopter hovered to investigate the possible field of marijuana." *Id.* at 498-99, 809 S.E.2d at 554.  In *State*

*v. Spencer*, not only was the shed where marijuana was found "located approximately twenty yards from and directly behind defendant's residence[,]" but also the defendant "had been seen on numerous occasions in and around the out-buildings directly behind his house[,]" and only "when considered with the fact that marijuana seeds were found in [the] defendant's bedroom," did the Court conclude the evidence raised "a reasonable inference that [the] defendant exercised custody, control, and dominion over the . . . shed and its contents." 281 N.C. 121, 130, 187 S.E.2d 779, 784 (1972).

In *State v. Baxter*, our Supreme Court determined there was sufficient evidence the defendant had constructively possessed marijuana where the marijuana was found under men's clothing and in a men's jacket; given the only occupants of the home were the defendant and his wife, the evidence gave rise to a reasonable inference the marijuana belonged to the defendant. 285 N.C. 735, 737-38, 208 S.E.2d 696, 697-98 (1974). And in *State v. Alston*, although there were four other people in the home at the time of the search, there was ample evidence the defendant constructively possessed the cocaine found in the home's "entertainment room" where the State's evidence tended to show the defendant "regularly visited and sold drugs" from the home, admitted possession of cocaine found in a different room, was present in the home's entertainment room prior to the officers executing their search, had sold crack cocaine in the entertainment room earlier that evening, and his gun was found in the entertainment room. 193 N.C. App. 712, 716-17, 668 S.E.2d 383, 387

(2008). This Court specifically noted "[e]vidence of conduct by the defendant indicating knowledge of the controlled substance or fear of discovery is also sufficient to permit a jury to find constructive possession." *Id.* at 716, 668 S.E.2d at 386 (citing *State v. Turner*, 168 N.C. App. 152, 156, 607 S.E.2d 19, 22-23 (2005)). When the officers had entered the home, the defendant had run down a hallway, crashed into a door, and appeared to throw something into another room. *Id.* at 713, 668 S.E.2d at 385. Additionally, the evidence showed the other self-professed drug dealer in the home got his cocaine from the defendant, "usually did not keep more than one gram of cocaine on his person[,] and kept his cocaine buried in the yard[.]" *Id.* at 717, 668 S.E.2d at 387.

These cases demonstrate the fact-specific nature of our inquiry and heed our Supreme Court's guidance that unless the defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances linking the defendant to the contraband before constructive possession may be inferred. *Chekanow*, 370 N.C. at 493, 809 S.E.2d at 550; *Bradshaw*, 366 N.C. at 95, 728 S.E.2d at 349. No such chain of facts exists here. *See State v. Lee*, 213 N.C. App. 392, 396, 713 S.E.2d 174, 177 (2011) (" 'Circumstantial evidence is proof of *a chain of facts and circumstances* indicating the guilt or innocence of a defendant.' " (emphasis added) (quoting *State v. Adcock*, 310 N.C. 1, 36, 310 S.E.2d 587, 607-08 (1984))).

*Hampson, J., dissenting.*

Thus, because " 'when there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession[,]' " *Chekanow*, 370 N.C. at 495, 809 S.E.2d at 551 (quoting *United States v. Wright*, 739 F.3d 1160, 1168 (8th Cir. 2014) and citing *State v. Thorpe*, 326 N.C. 451, 455-56, 390 S.E.2d 311, 314 (1990)), the State's evidence in this case raises, at most, only a mere suspicion Defendant had possession of the sawed-off shotgun, *see Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted). Therefore, the evidence was insufficient to show Defendant constructively possessed the sawed-off shotgun. Consequently, I would hold the trial court erred in denying Defendant's Motions to Dismiss the charge of Possession of a Weapon of Mass Destruction. Accordingly, I respectfully dissent.